OPINION OF THE COURT
Arthur E. Blyn, J.
Petitioner seeks various relief in this CPLR article 78 proceeding relating to his application for reinstatement to his former position as a sergeant in the New York City Police Department.
Petitioner was appointed to the New York City Police Department on April 17, 1964. In 1972 he was promoted to the rank of sergeant, where he served until he was retired on disability in 1976.
Petitioner has been receiving ordinary disability retirement benefits since 1976, when he was diagnosed as suffering from anxiety neurosis and depression.
Petitioner claims that in 1980, after he ceased smoking and drinking caffeinated beverages, his symptoms disappeared. By letter dated October 20, 1980, petitioner submitted a formal request to be reinstated to his former position with the Police Department.
*685 In the three-year period following his request for reinstatement, petitioner was bounced from one end to the other of respondents’ bureaucratic maze. In January 1981, the Police Department Pension Fund Medical Board (the Medical Board) — allegedly following a 15-minute interview — found that petitioner “manifests a personality disorder of sufficient severity to interfere with his police duties”, and recommended that petitioner be disapproved for reinstatement. Petitioner subsequently submitted a report from a psychiatrist which showed he was completely free of anxiety symptoms; the respondent board of trustees thereupon remanded the matter to the Medical Board in May 1981 for the purpose of having petitioner examined by a psychiatrist designated by the Supervising Chief Police Surgeon.
Commencing in May 1982 and on five occasions continuing through July 1982, petitioner was examined by Dr. Nordlicht, the psychiatrist chosen by the police department. Petitioner’s characterization of the report of Dr. Nordlicht dated July 26, 1982 as “positive in all respects” is not inappropriate. Dr. Nordlicht concluded at the end of his report that “in view of these findings there is no reason why Mr. Mitlof [petitioner] should not be able to function effectively and assume all the responsibilities demanded of a police officer”.
Following the issuance of Dr. Nordlicht’s report, petitioner again appeared before the Medical Board on September 30, 1982. The Medical Board unanimously approved petitioner’s application for reinstatement, finding that “at the present time there are no manifest psychological or psychiatric problems that would preclude his being considered for reinstatement”.
This was not, however, the end of the road for petitioner’s fight for reinstatement. In October 1982, respondents apparently became concerned with “the legality of petitioner’s requests” relating to reinstatement, including back pay, salary, seniority and promotion “as if petitioner had never retired”. Also at issue was the interpretation of the Administrative Code of the City of New York § B18-44.1, which deals with periodic review of disability retirement pensions — a section which, according to respondents, had never before been utilized by a pensioner seeking reinstatement.
Administrative Code § B18-44.1 provides as follows:
“Safeguards on disability retirement
“a. Once each year the board may, and upon his application shall, require any disability pensioner, under the minimum age or period for service retirement elected by him, to undergo *686 medical examination. Such examination shall be made at the place of residence of such beneficiary or other place mutually agreed upon. Upon the completion of such examination the medical board shall report and certify to the board whether such beneficiary is or is not totally or partially incapacitated physically or mentally and whether he is or is not engaged in or able to engage in a gainful occupation. If the board concur in a report by the medical board that such beneficiary is able to engage in a gainful occupation, he [sic] shall certify the name of such beneficiary to the appropriate civil service commission, state or municipal, and such commission shall place his name as a preferred eligible on such appropriate lists of candidates as are prepared for appointment to positions for which he is stated to be qualified of a salary grade not exceeding that from which he was last retired. Should such beneficiary be engaged in a gainful occupation, or whould [sic] he be offered city-service as a result of the placing of his name on a divil [sic] service list, such board shall reduce the amount of his disability pension and his pension-for-increased-take-home-pay, if any, to an amount which, when added to that then earned by him, or earnable by him in city-service so offered him, shall not exceed the current maximum salary for the title held by him when he was retired. Should the earning capacity of such beneficiary be further altered, such board may further alter his pension and his pension-for-increased-take-home-pay, if any, to an amount which shall not exceed the rate of pension and his pension-for-increased-take-home-pay, if any, upon which he was originally retired but which, subject to such limitation, shall equal, when added to that earnable by him, the current maximum salary for the title held by him when he was retired. The provisions of this section shall be executed, any provision of the charter or the code to the contrary notwithstanding.
“b. Should any disability pensioner, under the minimum age or period for service retirement elected by him, refused [sic] to submit to one medical examination in any year by a physician or physicians designated by the medical board, his pension and his pension-for-increased-take-home-pay, if any, may be discontinued until his withdrawal of such refusal. Should such refusal continue for one year, all his rights in and to such pension and his pension-for-increased-take-home-pay, if any, may be revoked by such board.”
In December 1983, the Office of the Deputy Commissioner for Legal Matters issued a memorandum report which concluded, inter alla, that the Medical Board had not properly considered petitioner’s case, in that section B 18-44.1 required that the *687 Medical Board “certify two discrete findings of medical fact to the Board of Trustees: one, the presence or absence of total or partial physical or mental incapacity, and two, the ability to engage in a gainful occupation”. The report found that the Medical Board had satisfied the first, but not the second, of the above requirements.
The legal memorandum further notes that, while the Medical Board “gratuitously recommended” petitioner for reinstatement, they were without legal authority to do so. In a detailed analysis of section B18-44.1, and petitioner’s rights thereunder, the report concluded that the New York City Personnel Director was authorized to determine, based on the Medical Board’s findings, the position for which petitioner was qualified within the entire range of civil service positions.
On March 28,1983, the Board of Trustees remanded petitioner’s case to the Medical Board for reconsideration in light of the report discussed above and the concurring opinion of the Corporation Counsel’s office.
On June 9, 1983 — apparently without further interview of petitioner and upon consideration of no new evidence — the Medical Board issued its third opinion in this matter, which concluded that petitioner “is currently manifesting no signs or symptoms of psychiatric disorder. He is therefore, currently able to engage in a gainful occupation or employment. However, based upon his previous history, he would have to be seen as a high risk for return to the stress and strain of full police duty”. The Medical Board thereupon unanimously recommended denial of petitioner’s application for reinstatement (obviously still unaware that, at least in the opinion of the Office of the Deputy Commissioner for Legal Matters, they were without authority to make such a recommendation).
Finally, on December 1, 1983, the Board of Trustees denied petitioner’s request for reinstatement. Petitioner thereafter commenced this proceeding pursuant to article 78.
The court has rarely seen a statute as sloppily written as Administrative Code § B18-44.1 — from several typographical errors to sometimes unintelligible substantive provisions. Other than one phrase in the first sentence, the statute is aimed solely at safeguarding the interests of the instant respondents by providing for periodic review of disability pensioners, to ascertain whether such pensions were still appropriate. It is obvious that little thought was given to the procedures whereby disability pensioners could apply for reinstatement (that allocation of time in the legislative thought process was to some extent *688 justified; petitioner is an anomaly, as his was the one and only request for reinstatement ever received by the Police Department).
The December 1983 memorandum by the Department of Legal Matters did an admirable job in untangling the confusing jumble of section B18-44.1. The memorandum’s advice was not, however, fully followed by the Medical Board, as noted above; nor (more importantly) by the Board of Trustees, as the trustees denied petitioner’s request in terms of “reinstatement”, instead of merely addressing the issue of whether he “is able to engage in a gainful occupation” (as required by section B18-44.1).
On this ground alone, the determination by the Board of Trustees was improper, and may be held to be “arbitrary and capricious”. Just as the Medical Board has no authority under section B18-44.1 to recommend for or against reinstatement, neither does the Board of Trustees have the authority to address a request for reinstatement; the only question is whether petitioner is able to engage in a gainful occupation. That question was answered in the affirmative even in the third Medical Board report, and there was no basis whatever for the trustees not to concur in that finding. Upon such finding, the trustees would have been required to certify petitioner to the Civil Service Commission “for appointment to positions for which he is stated to be qualified”.
The remaining question, then, concerns the procedure by which the trustees would determine the positions for which petitioner is qualified. Unfortunately, this question remains totally unanswered by the Administrative Code. This court has complete confidence, however, in the ability of the trustees to promptly promulgate an appropriate and reasonable procedure, with the able assistance of counsel, which will adequately safeguard petitioner’s rights.
Finally, the court finds that the Office of the Deputy Commissioner for Legal Matters properly determined that, under section B18-44.1, there is no basis for petitioner’s request for back pay, salary, seniority and promotion as if he had never retired.
Accordingly, the petition is granted to the extent that this matter is remanded to the Board of Trustees for further proceedings in accordance with the foregoing.